# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

JAMES ALLYSON LEE,

    Petitioner,

    v.

STEPHEN UPTON, Warden,

    Respondent.

No. 5:10-CV-17

## ORDER

    State capital prisoner James Allyson Lee petitions for habeas corpus. The petition is due to be **DENIED** for the following reasons.

## BACKGROUND

### The Underlying Crime and Conviction[1]

    Lee and an accomplice broke into a gun store in Toombs County[, Georgia] on May 25, 1994, and stole several guns, including a ten millimeter Glock pistol. Lee and his girlfriend then drove to Pierce County[, Georgia] planning to kill Lee's father and steal his Chevrolet Silverado pickup truck. After learning that his father was not home but that his father's live-in girlfriend, Sharon Chancey, was there, Lee had his girlfriend lure Chancey from the home in the early morning hours of May 26 by claiming that Lee was stranded nearby in his girlfriend's broken down Toyota automobile. When Chancey pulled up to the Toyota in the Silverado and

---

[1] This Court presumes the Georgia Supreme Court's factual determinations to be correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

got out, Lee shot her in the face and threw her in the back of the Silverado. After driving the Silverado to a secluded area in Charlton County, [Georgia,] he dragged Chancey into the woods, removed two rings from her fingers, and shot her two more times when she grabbed his arm. After replacing the Silverado's license plate with the license plate from the Toyota, Lee and his girlfriend drove the Silverado to Florida. While traveling in the Silverado with two male friends at about 11:30 that night, Lee was stopped by law enforcement for a broken taillight.

Hall v. Lee, 684 S.E.2d 868, 871-72 (Ga. 2009). "[W]hen Lee was stopped . . ., he placed a cocked, loaded gun that he had stolen in his companion's lap and told the companion to get out and 'shoot the cop' while he 'cover[ed]' the companion with another stolen, loaded gun." Id. at 881. The companion did not do so.

[Lee] was arrested after a check revealed that the Silverado was stolen. The police recovered from the Silverado Chancey's purse and identification and the Glock pistol, which later was determined to be the murder weapon. Lee made several incriminating statements to police, including videotaped statements at the scenes of the shootings describing how the crimes occurred.

Id. at 872. Lee "was on probation at the time of the crimes for two counts of burglary and for theft by taking for stealing a truck . . . ." Id. at 880.

Fifteen "months after the crimes while awaiting trial, Lee, acting alone, escaped from jail, stole a vehicle, and fled to Florida . . . ." Id. at 880-81. When he was recaptured, Lee "made several threatening statements to

police, including that he still wanted to kill his father and that, if he were ever given the opportunity, he swore that he would kill the detective and the [Georgia Bureau of Investigation] agent assigned to his case." Id. at 881.

A jury convicted Lee of malice murder, armed robbery, and possession of a firearm during the commission of a crime on June 4, 1997.[2] Lee v. State, 514 S.E.2d 1, 2 (Ga. 1999); see also Dkt. No. 11-14 at 46:22-25, 53. Lee was sentenced to death on June 6, 1997. Hall v. Lee, 684 S.E.2d at 871; see also Dkt. No. 12-3 at 85:10, 94. Lee moved for a new trial on July 3, 1997, and amended that motion on February 19, 1998. Lee v. State, 514 S.E.2d at 3 n.1. The motion was denied on April 15, 1998. Id. Lee's conviction was unanimously upheld by the Georgia Supreme Court on direct appeal. See generally id. The U.S. Supreme Court denied Lee's petition for a writ of certiorari on November 15, 1999, and denied rehearing on January 24, 2000. Lee v. Georgia, 528 U.S. 1006 (1999), reh'g den'd 528 U.S. 1145 (2000).

**Habeas History**

Lee filed a petition for a writ of habeas corpus in the Superior Court of Butts County on August 4, 2000. Dkt. No. 20-16 at 2. He amended it on April 16, 2001. Id. The Superior Court held an evidentiary hearing on August 17, 2001.

---

[2] His conviction for felony murder was vacated by operation of law. Lee v. State, 514 S.E.2d 1, 3 n.1 (Ga. 1999).

<u>Id.</u> It granted Lee's petition on March 12, 2009. <u>See</u>
<u>generally</u> <u>id.</u> The Georgia Supreme Court unanimously reversed
on November 2, 2009. <u>Hall v. Lee</u>, 684 S.E.2d 868.

Lee filed his federal habeas petition on February 5,
2010. Dkt. No. 1. He amended it on September 16, 2010. Dkt.
No. 29. Lee filed his merits brief on March 16, 2015. Dkt.
No. 80. The State filed its response in opposition on July
28, 2015. Dkt. No. 87. Lee replied on October 13, 2015.
Dkt. No. 90. He filed a supplemental brief on October 22,
2015. Dkt. No. 92. The petition is now ripe for disposition.

## LEGAL STANDARD

Because Lee's federal petition was filed after April 24,
1996, this case is governed by the Antiterrorism and Effective
Death Penalty Act of 1996 ("AEDPA"). <u>Payne v. Allen</u>, 539 F.3d
1297, 1312 (11th Cir. 2008). Under AEDPA, state courts'
determination of factual issues are "presumed to be correct"
unless the petitioner rebuts them "by clear and convincing
evidence." 28 U.S.C. § 2254(e)(1).

Their legal determinations can only be rejected if they
"resulted in a decision that . . . involved an unreasonable
application of[ ] clearly established Federal law, as
determined by the Supreme Court of the United States" or "was
based on an unreasonable determination of the facts in light
of the evidence presented in the State court proceeding." <u>Id.</u>

§ 2254(d). The first prong is only satisfied if the state court "unreasonably applies [the governing legal] principle to the facts of the prisoner's case." <u>Williams v. Taylor</u>, 529 U.S. 362, 413 (2000). "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." <u>Id.</u> at 410. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." <u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011) (quotation marks and citation omitted).

AEDPA deference does not apply to claims that the state habeas courts do not reach—these are reviewed de novo. <u>Cone v. Bell</u>, 556 U.S. 449, 472 (2009).

## DISCUSSION

Lee's petition must be denied. Lee alleges five errors: (1) ineffective assistance of counsel; (2) improper jury instructions; (3) a violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963); (4) trial-court errors; and (5) violations of the Eighth and Fourteenth Amendments by imposition of the death sentence in this case. Dkt. Nos. 29, 44. This Court finds no basis for granting habeas relief.[3]

---

[3] Most of Lee's claims fail for reasons other than exhaustion requirements. The State raises exhaustion repeatedly in its brief. Dkt. No. 87 at 162-65, 179-80, 183-86, 224-26. But in its answer to the currently operative petition, the State only characterized one issue—one not pressed upon by Lee here—as unexhausted. Dkt. No. 30 at 8. It specifically classified as

## I. LEE'S INEFFECTIVE-ASSISTANCE CLAIMS FAIL.

Lee unsuccessfully raises three issues with the representation he received at trial and on direct appeal: failure to investigate into and adequately present mitigating evidence, failure to object to biblical references in the State's closing argument, and various other shortcomings.

An ineffective-assistance claim cannot succeed unless the petitioner shows both (1) that his attorney's performance was objectively unreasonable, by a preponderance of the evidence, and (2) a reasonable probability that the outcome of his proceeding would have been different but for that deficient performance. Chandler v. United States, 218 F.3d 1305, 1312-13 (11th Cir. 2000) (en banc). The objective reasonableness of an attorney's performance is gauged by "prevailing professional norms." Strickland v. Washington, 466 U.S. 668, 688 (1984). This inquiry is commonsensical and holistic, as "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a

---

"reviewable" all of the issues it now claims are unexhausted, except for one aspect of ineffective assistance. Id. at 16, 19-20, 22, 24-25. The answer thus expressly waived exhaustion except as to that one issue. See 28 U.S.C. § 2254(b)(3); cf. Dorsey v. Chapman, 262 F.3d 1181, 1186-87 (11th Cir. 2001) (deeming state to have expressly waived exhaustion by expressly declining to raise it in answer, despite raising it in appellate briefing). The Court hereby accepts that waiver. See Thompson v. Wainwright, 714 F.2d 1495, 1508-09 (11th Cir. 1983) (affording district courts discretion to accept waivers of exhaustion).

AO 72A
(Rev. 8/82)

criminal defendant." <u>Id.</u> at 688–89. It is also "highly deferential," with a "strong presumption" of reasonableness. <u>Id.</u> at 689. Performance is only unreasonable if "no competent counsel would have taken the action" at issue. <u>Chandler</u>, 218 F.3d at 1315.

As for prejudice, the petitioner again bears a high burden. <u>Sullivan v. DeLoach</u>, 459 F.3d 1097, 1109 (11th Cir. 2006). "It is not enough . . . to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Strickland</u>, 466 U.S. at 693. Rather, the petitioner has to show "that the decision reached would reasonably likely have been different absent the [counsel's] errors." <u>Id.</u> at 696. Under these standards and AEDPA deference, each of Lee's contentions fails.

**A. Lee's Mitigating-Evidence Contention Fails.**

Lee unsuccessfully argues that his trial counsel did not adequately research and present mitigating evidence. An application for a writ of habeas corpus will not be granted unless the adjudication of the claim involved an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1)-(2). The Georgia Supreme Court addressed this issue on its merits. <u>Hall v. Lee</u>, 684 S.E.2d 868, 876 (Ga.

2009). This Court can only reject that Court's decision if it was so unreasonable an application of a U.S. Supreme Court holding that no fairminded jurist could agree with it. Hill v. Humphrey, 662 F.3d 1335, 1347 (11th Cir. 2011); see also Bobby v. Dixon, 565 U.S. 23, 32-33 (2011) (per curiam); Schriro v. Landrigan, 550 U.S. 465, 473 (2007).

Here, the decision was within the wide realm of reasonability. The Georgia Supreme Court permissibly sidestepped the question of performance, holding that Lee had not shown prejudice. Hall v. Lee, 684 S.E.2d at 876; see also Strickland, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . ., that course should be followed."). It correctly identified the standard as being whether, but for counsel's errors, there was a reasonable probability that the sentencer "'would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.'" Lee, 684 S.E.2d at 876 (quoting Strickland, 466 U.S. at 695). It further noted its duty to "reweigh the evidence in aggravation against the totality of available mitigating evidence." Id. at 876-77 (quoting Wiggins v. Smith, 539 U.S. 510, 534 (2003)). It used the right framework.

To apply those standards, the Court began by observing that Lee's trial counsel presented mitigating evidence that

Lee's childhood was characterized by "instability, poverty, violence, abandonment, and alcohol and drug use." Hall v. Lee, 684 S.E.2d at 877. Some of the evidence mentioned neglect and abuse. Id. at 877-78. There was also expert evidence that Lee had attention deficit hyperactivity disorder ("ADHD"), which made him "impulsive," "overly active," and less able to "regulat[e] and control" his emotions and behavior. Id. at 878-79. That condition "was aggravated by [Lee's] feelings of anger, frustration, resentment, and abandonment" toward his father. Id. at 879. The expert testified that Lee could thrive in a structured environment, such as a prison. Id. at 878.

The Court then assessed the aggravating evidence. The State had a strong case against Lee, given his "incriminating statements to his companions and to the police." Id. at 880. The jury specifically found statutory aggravators: "Lee committed the murder while engaged in the commission of armed robbery and kidnapping with bodily injury"; "he committed the murder for himself or another for the purpose of receiving money or any other thing of monetary value"; and "the offense of murder was outrageously or wantonly vile, horrible, or inhuman in that it involved an aggravated battery to the victim before death." Id. at 880 n.7. There was also serious non-statutory aggravating evidence. Most disturbingly, when

Lee was stopped after the murder, he gave his companion a stolen gun and "told the companion to get out and 'shoot the cop' while [Lee] 'cover[ed]'" him "with another stolen, loaded gun." Id. at 881. At the time of the crime, Lee was on probation for two burglary counts and stealing a truck. Id. at 880. Before trial, Lee "escaped from jail, stole a vehicle, and fled to Florida," then threatened to kill his father and law-enforcement officials working his case. Id. at 880-81. Once, Lee "had violated his probation and had stolen a car and viciously beaten a man because he 'wanted to see blood, a lot of blood.'" Id.

The Georgia Supreme Court reweighed the trial evidence together with the habeas evidence. Seeking habeas, Lee had brought forward an affiant testifying that Lee's mother would regularly physically assault him, evidence of four instances where she did so, evidence of her drug-related dysfunction, evidence that this impacted his development by causing him to behave like a dog, and more specific evidence of his childhood poverty. Id. at 879-80. Lee also supplemented his mental-health evidence with a new diagnosis of post-traumatic stress disorder ("PTSD"), based on his childhood. Id. at 881.[4]

---

[4] The Georgia Supreme Court discounted that diagnosis in part because "Lee's . . . expert failed to connect [it] to the crimes." Id. at 882. At first glance, this appears to be in tension with Tennard v. Dretke, 542 U.S. 274, 287 (2004). ("[W]e cannot countenance the suggestion that low IQ evidence is not relevant mitigating evidence . . . unless the defendant

AO 72A
(Rev. 8/82)

Still, the Court held that there was "no reasonable probability that Lee would have received a different sentence." Id. at 881; see also id. at 882.

This Court cannot find that this holding was so unreasonable an application of U.S. Supreme Court precedent that no fairminded jurist could agree with it. The relevant U.S. Supreme Court precedent establishes only general rules, like the need to deny relief unless there is a reasonable probability that the sentence would have turned out differently and the need to reweigh all of the trial and habeas evidence. This means state courts must use "a substantial element of judgment." Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). AEDPA respects this by affording them even "more leeway" than usual. Id.; see also Knowles v.

---

also establishes a nexus [between it and] the crime."). But in context, it is clear that the Georgia Supreme Court did not hold that the diagnosis was irrelevant per se. The comment at issue came in response to Lee's argument that the PTSD diagnosis was "more compelling" than the ADHD one. Id. The Court first observed that the expert made a connection between Lee's ADHD diagnosis and the crimes at trial—but did not do so in habeas with regard to the PTSD diagnosis. Id.; see also id. at 881 ("[H]e would have diagnosed Lee as also suffering from [PTSD], would have testified to that diagnosis, and also would have testified to and explained how the chaos, neglect, and abuse in Lee's life 'had a clear nexus to the crimes in this case.' However, [he] did not explain how Lee's PTSD was related to the murder. Although he noted 'the vague flashbacks that [Lee] recalled during [his] interview with him,' [he] did not claim that, at the time of the murder, Lee was experiencing a flashback or was in a disassociative [sic] state as a result of his PTSD."). Only then did it conclude that there was no prejudice from the missing PTSD diagnosis. Id.

The Court takes this to mean that the PTSD diagnosis would not have added any weight because the ADHD one was similar, other than being more closely related to Lee's crime. This Court's confidence in its interpretation is bolstered by the Georgia Supreme Court's explicit reiteration immediately before the statement at issue of the need to reweigh all of the evidence. See id. Therefore, the "connection" comment does not violate Tennard.

*Mirzayance*, 556 U.S. 111, 123 (2009) (deeming ineffective-assistance claim "doubly deferential"). What is more, this Court's focus is not on the Georgia Supreme Court's *opinion*—it is on "whether the *decision* . . . was an unreasonable application" of U.S. Supreme Court holdings. Bishop v. Warden, GDCP, 726 F.3d 1243, 1255 (11th Cir. 2013); see also Gissendaner v. Seaboldt, 735 F.3d 1311, 1329 (11th Cir. 2013) ("AEDPA focuses on the result . . ., not on the reasoning that led to that result, and nothing in the statute requires a state court to accompany its decision with any explanation, let alone an adequate one." (quotation marks and citation omitted)); cf. Wright v. Sec'y for Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002) ("Requiring state courts to put forward rationales for their decisions so that federal courts can examine their thinking smacks of a 'grading papers' approach that is outmoded in the post-AEDPA era." (citation omitted)).

U.S. Supreme Court and Eleventh Circuit holdings favoring petitioners do not unambiguously foreclose the decision at which the Georgia Supreme Court arrived. Each was either followed by that Court or is distinguishable:

- The Court in fact applied Strickland's test. Hall v. Lee, 684 S.E.2d at 872-73 & n.1, 876-77.

- _Sears v. Upton_, 561 U.S. 945 (2010) (per curiam), was not an AEDPA case. _See_ _Wilson v. Warden, Ga. Diagnostic Prison_, 834 F.3d 1227, 1243-44 (11th Cir. 2016) (Jordan, J., dissenting), _cert. granted_, 137 S. Ct. 1203 (2017). It is also distinguishable because the trial mitigation evidence there was entirely different from, and contradicted by, the habeas evidence. There, "[c]ounsel's mitigation theory . . . was calculated to portray the adverse impact of [the petitioner's] execution on his family and loved ones." _Sears_, 561 U.S. at 947. In particular, counsel "presented evidence describing [the petitioner's] childhood as stable, loving, and essentially without incident." _Id._ The jury never heard that the petitioner's parents were physically and verbally abusive, they divorced when he was young, a cousin sexually abused him, and his brother—a convicted drug abuser and dealer—introduced him to a criminal lifestyle. _Id._ at 948, 950. Nor was it told about the petitioner's severe cognitive defects, which "appear[ed] to be [caused by] significant frontal lobe brain damage" and teenage substance abuse. _Id._ at 945-46.

Here, by contrast, the mitigation evidence at trial was both of the same species as and compatible with what was uncovered in greater detail during the state habeas proceedings: trial counsel readily told the jury that Lee's upbringing was unstable. _See_ Dkt. No. 12-3 at 33:23-34:7 ("We

AO 72A
(Rev. 8/82)

brought in his mother. The mother, when [Lee] was born, was a 19-year-old welfare mother. <u>She had her own problems, she had a lot of them</u>. She attempted to raise [Lee] the best way she could. I think <u>she tried and failed</u> when it came to giving him a nurturing, enriching home. She failed to give him any kind of discipline or any kind of structure at an early age, but she tried the best she could, and I'm not here to belittle his mama, but <u>it wasn't the most ideal environment</u> . . . ." (emphases added)).

- AEDPA deference did not apply to the prejudice analysis in <u>Johnson v. Secretary, Department of Corrections</u>, 643 F.3d 907, 930 (11th Cir. 2011). That case is further distinguishable for reasons like those presented by <u>Sears</u>. The Eleventh Circuit found prejudice despite more than de minimis mitigating evidence, but it did so in light of contradictions between the trial and habeas evidence—not just the lack of detail present here. Trial counsel there brought forward evidence that the petitioner's parents were "cold and uncaring, something in the nature of the 'American Gothic' couple." <u>Id.</u> at 936. In fact, they were raging alcoholics—so much so that the petitioner was put into an orphanage when his father went on a three-month drinking binge in another state, the petitioner's mother attacked his father with a butcher's knife, and the petitioner was singled out for particularly

severe beatings. <u>Id.</u> at 936–37. The jury never heard anything about the petitioner's mother's repeated suicide attempts—one of them discovered by the petitioner when he was a child. <u>Id.</u> It did not know anything about how the petitioner later found his mother, dead of an overdose, clutching a photograph of his dead brother, who died of an overdose. <u>Id.</u> at 937. The jury also heard that the petitioner's grandparents "were caring and nurturing people," whereas habeas evidence showed them to have inflicted horrifying physical, emotional, and psychological abuse on the petitioner. <u>Id.</u> Here, by contrast, the jury heard that Lee's mother was addicted to drugs, and that parental domestic violence, abuse, and neglect were present in Lee's childhood. It was only deprived of some (undeniably disturbing) details.

• <u>Porter v. McCollum</u>, 558 U.S. 30 (2009) (per curiam), can be distinguished as featuring only de minimis mitigating evidence at trial. The jury there "heard almost nothing that would humanize [the petitioner] or allow them to accurately gauge his moral culpability," although he was a war hero who struggled to readjust to life at home, with childhood abuse and a brain abnormality. <u>Id.</u> at 41. Besides, <u>Porter</u> lacked the sort of aggravating evidence present here, including Lee's attempt to have a police officer shot, death threats against law enforcement, and escape from jail.

AO 72A
(Rev. 8/82)

• <u>Rompilla v. Beard</u>, 545 U.S. 374 (2005), did not apply AEDPA to the question of prejudice. <u>Id.</u> at 390. It is also distinguishable because the jury there heard only minimal mitigating evidence: "[F]ive of [the petitioner's] family members argued in effect for residual doubt, and beseeched the jury for mercy, saying they believed [the petitioner] was innocent and a good man." <u>Id.</u> at 378. Left unpresented was the petitioner's extensive history of childhood physical abuse, which included being regularly beaten and "locked . . . in a small wire mesh dog pen that was filthy and excrement filled." <u>Id.</u> at 392. There was also no hint of the petitioner's diagnosis of organic brain damage. <u>Id.</u>

• <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), did not apply AEDPA deference to the issue of prejudice because the state supreme court unreasonably applied the law in rejecting what it called "undue 'emphasis on mere outcome determination.'" <u>Id.</u> at 397 (emphasis omitted); <u>see also</u> <u>Cullen v. Pinholster</u>, 563 U.S. 170, 202 (2011) (distinguishing <u>Williams</u>). Besides, <u>Williams</u> featured minimal mitigation: the jury heard that the petitioner was "a 'nice boy' and not a violent person," and that in a robbery, "he had removed the bullets from a gun so as not to injure anyone." <u>Id.</u> at 369. But the petitioner had been so severely abandoned as a child that his parents were imprisoned for criminal neglect, he had

AO 72A
(Rev. 8/82)

been placed in an abusive foster home, he had a borderline intellectual disability, and he was a model prisoner. Id. at 396.

- Ferrell v. Hall, 640 F.3d 1199 (11th Cir. 2011), did not apply AEDPA to prejudice. Id. at 1226. It is also distinguishable because the evidence the counsel presented in mitigation was de minimis. The jury there heard five of the petitioner's family members testify for a total of 26 minutes that they did not believe he was guilty, he deserved mercy, and he "had committed himself to Christ before the murders." Id. at 1206. The counsel there failed to discover that the petitioner suffered from extensive mental health problems and diseases including organic brain damage to the frontal lobe, bipolar disorder, and temporal lobe epilepsy. Id. at 1203. They also failed to discover that the petitioner had attempted suicide as a child, that his conduct was not entirely volitional, or that his father physically abused him. Id.

> Neither the jury nor the sentencing judge was ever told, because defense counsel never discovered that [the petitioner] suffer[ed] from extensive, disabling mental health problems and diseases including organic brain damage to the frontal lobe, bipolar disorder, and temporal lobe epilepsy. Nor did they learn that the defendant had attempted suicide at age eleven, or that because of these mental health issues, [he] exhibit[ed] increased impulsivity and decreased sound judgment; that his conduct was not entirely volitional; or that his judgment and mental flexibility were significantly impaired by organic brain damage. Nor, finally were

they ever told that [his] father was physically abusive to his children, especially to [the petitioner], waking them in the middle of the night to beat them (sometimes after stripping them naked) with razor strops, fan belts, and old used belts; that the family was repeatedly evicted from their homes and hungry, and lived in fear of those to whom the father owed gambling debts; or that [the petitioner's] mother suffered from clinical depression, suicidal ideations, rage blackouts, and urges to physically injure her children.

Id. at 1203.

- Wiggins v. Smith, 539 U.S. 510 (2003), is distinguishable because of de minimis trial evidence, too. The petitioner's jury knew only that he "had no prior convictions." Id. at 537. He had suffered physical abuse, poverty, sexual molestation, several rapes, and homelessness. Id. at 535. Additionally, unlike Lee, the Wiggins petitioner "[did] not have a record of violent conduct." Id.

- DeBruce v. Commissioner, Alabama Department of Corrections, 758 F.3d 1263 (11th Cir. 2014), is distinguishable because it featured relatively little aggravation compared to that present here. Id. at 1286–87 (Tjoflat, J., dissenting) (identifying the two aggravators as a second-degree robbery and the capital murder for which the petitioner was convicted). In addition, the jury there was misled into thinking the petitioner "had an impoverished childhood" that "was otherwise unremarkable" and "had been a successful student who had attended college." Id. at 1276

AO 72A
(Rev. 8/82)

(majority opinion). Beyond a passing mention of a mental disorder for which the petitioner had been treated, the jury was not made aware of the petitioner's brain-damage diagnosis, his seizure-like blackouts, that he had been regularly attacked by gangs as a child, that he had abused substances as a teenager, his suicide attempts, or that his sister would regularly beat him and punish him by withholding food. Id. at 1270, 1276. Here, counsel did *not* totally "fail[ ] to introduce . . . available mitigating evidence of the defendant's mental impairment and history of abuse." Id. at 1277 (referring to a "<u>complete</u> omission of this type of evidence." (emphasis added)). The jury knew that Lee was diagnosed with ADHD affecting his decision-making and self-control, and had a deprived childhood. Hall v. Lee, 684 S.E.2d at 878-79.

• Williams v. Allen, 542 F.3d 1326 (11th Cir. 2008), did not apply AEDPA to the question of prejudice, as the state appellate court unreasonably applied the law in finding no prejudice "primarily" because "the additional mitigating evidence did not refute the evidence establishing [the petitioner's] responsibility for . . . capital murder." Id. at 1343. The Georgia Supreme Court made no such error here. Hall v. Lee, 684 S.E.2d at 876-77, 882. Beyond that, Williams found prejudice due to five factors, only the first of which

AO 72A
(Rev. 8/82)

is relevant here:   the jury heard that the petitioner was beaten, whipped, and choked by his father, who also drank, used drugs, beat the petitioner's mother, and raped his own intellectually disabled daughter.   Id. at 1329.   The petitioner later brought forward evidence that "the violence [he] experienced . . . as a child far exceeded—in both frequency and severity—the punishments described at sentencing," and his "parents provided him with inadequate food and clothing, neglected his basic hygiene and medical needs, permitted him to roam the neighborhood unsupervised, and ignored his deteriorating academic performance."   Id. at 1342-43.   Besides this, his mother was "a neglectful parent who was frequently absent."   Id. at 1342.   The Eleventh Circuit deemed this evidence "relevant."   Id.

But it found prejudice after considering the omitted evidence together with other factors absent here.   The jury there recommended against imposition of the death penalty by a vote of nine to three.   Id. at 1330.   Here, the jury unanimously sentenced Lee to death.   In Williams, the judge rejected the jury's recommendation "on the basis of a single statutory aggravating circumstance—one that [wa]s an element of the underlying capital murder charge."   Id. at 1343.   Here, there were multiple statutory aggravators and a variety of highly significant non-statutory ones.   The Williams judge

"discount[ed] the significance of [the petitioner's childhood] abuse at sentencing" because the petitioner had been cared for by his mother and grandmother—a conclusion "contradicted" by habeas evidence of the mother's neglect and her own part in physically abusing the petitioner. Id. at 1342-43. Here, the habeas evidence did not contradict the trial evidence.

- The Eleventh Circuit's decision in Cooper v. Secretary, Department of Corrections, 646 F.3d 1328 (11th Cir. 2011), is also distinguishable for several reasons. There, the petitioner's mother—his sole mitigation witness—testified to abuse *she* suffered at the hands of the petitioner's father, said the father emotionally abused the petitioner by "not being involved in his life," and described the father disciplining the petitioner with a belt so hard that he left marks. Id. at 1336, 1353; see also id. at 1356 (noting that prosecutor argued: "[Y]ou heard that his mother was married to a violent man and that he abused her. What has that got to do with the defendant?"). In fact, the petitioner himself had been subjected to "horrible abuse" from multiple family members. Id. at 1353. This made the state supreme court's finding that "a substantial part" of the petitioner's childhood deprivations came out at trial unreasonable, and so removed AEDPA deference. Id.

Here, Lee had several witnesses who collectively described parental violence, maternal drug abuse, and neglect and abuse visited upon *him*. Besides, the Georgia Supreme Court did not make as broad a factual finding as did the state supreme court in Cooper: it merely found that the jury heard about "the instability, poverty, violence, abandonment, and alcohol and drug use that Lee was exposed to as a child," plus abuse and neglect. Hall v. Lee, 684 S.E.2d at 877–78. This finding, even if arguably oversimplistic, has not been rebutted by clear and convincing evidence—so AEDPA deference applies here.

Besides, in Cooper, the habeas evidence would have qualified the petitioner for two statutory mitigators. Id. at 1354–55. Georgia does not have statutory mitigators. The Cooper habeas evidence also supported a slew of new non-statutory mitigators, including childhood abuse, substance abuse, possible "neurological deficits" from inhalant abuse, maternal abandonment, lack of education, learning deficits, depression, suicidal gestures, and an IQ a mere six points above the intellectual-disability range. Id. at 1355. Here, the habeas evidence only would have added further detail in support of childhood abuse and neglect mitigators, and possibly enhanced the mental-health mitigator based on ADHD with a PTSD diagnosis. What is more, the Cooper court found

that jurors may have interpreted the lack of mitigating witnesses—the petitioner's mother was the only one—as a sign that trial counsel could not find anything good about the petitioner. Id. Lee, by contrast, had several mitigating witnesses, one of whom the Georgia Supreme Court deemed particularly "strong." Hall v. Lee, 684 S.E.2d at 883; see also id. at 877-78.

• Lastly, Penry v. Lynaugh, 492 U.S. 302 (1989), and Eddings v. Oklahoma, 455 U.S. 104 (1982), are not on point. They held that state law cannot prevent consideration of mitigating evidence like Lee's. That is not at issue here.

Beyond these precedents that reached outcomes favorable to petitioners, the Court also notes Cullen v. Pinholster, 563 U.S. 170 (2011). There, the trial mitigation evidence—which was less extensive than that presented to the jury here, and also focused primarily on the petitioner's childhood and mental health—included the petitioner's mother's testimony that the petitioner's stepfather "was abusive, or nearly so." Id. at 199. No elaboration was given. In the state habeas proceedings, the petitioner brought forward testimony that he "was beaten with fists, belts, and even wooden boards" "several times a week." Id. at 201 (majority opinion), 226 (Sotomayor, J., dissenting). The U.S. Supreme Court found no prejudice because that evidence was "largely duplicat[ive]" of

the trial evidence. *Id.* at 200 (majority opinion). If brutal detail about a single, ambivalent reference to abuse could not establish prejudice in *Cullen*, it cannot do so here.

The Georgia Supreme Court's prejudice determination was not so unreasonable an application of U.S. Supreme Court holdings that no fairminded jurist could agree with it. Thus, Petitioner's argument that this Court should review the Georgia Supreme Court's decision *de novo* is without merit. The question of prejudice from ineffective assistance of counsel is fact-intensive. The mandatory guidance on point is general. The precedent either was followed or is distinguishable. Under AEDPA, this means that the Georgia Supreme Court's no-prejudice holding stands. Lee's contention that his trial counsel gave ineffective assistance by failing to present or investigate mitigating evidence fails.

### B. Lee's Biblical-References Contention Fails.

Also unconvincing is Lee's contention that his trial and appellate counsel gave ineffective assistance by not objecting to biblical references in the State's closing argument. The Georgia habeas courts did not decide this issue on the merits, so this Court does so de novo. *Cone v. Bell*, 556 U.S. 449, 472 (2009). The comments to which Lee objects are:

[Defense counsel] will argue that the defendant is worth saving, that this jury should show mercy and compassion to the defendant because it's in the Bible, and the Bible does teach us that we should show mercy and compassion in certain cases. The defendant himself quoted Scriptures,[5] but, you know, the devil himself can quote scriptures when necessary, the devil himself can do that.[6] But, you know, the Bible also tells us that God gave man the authority to establish laws to protect the innocent and to punish those who violate man's law, and it is God's authority to do that. The Bible tells us – And it says both ways. In Genesis it tells us that whosoever sheds man's blood, so shall man's blood be shed, for in the image of God all men are made, but then it does say about the compassion. But most important here is that God gave man authority to make law, and that's what we've done in this case. . . . There must be accountability in the state of Georgia for people who commit these type crimes [sic].

* * * * [T]he defense may also urge you not to play God in an attempt to make you feel like you are being asked to play God, to sentence him for the rest of his life and let him serve it in prison, in hopes that you will not give him the death penalty, to let God decide when he leaves this earth, but God has given us authority in certain situations. Because He gave us authority to make law, He has given us authority to make those decisions in certain cases.

---

[5] See Dkt. No. 12-2 at 197:3-8 ("Christ died for all. He died for you, He died for me and Sharon Chancey, and the way I believe is I stole from God when I did what I did, and I'm sorry, I'm very sorry, but I know that God's forgiven me because, when I did it, I did it in ignorance . . . spiritually speaking."), 209:18-25 ("Christ said He would die for one person, in this whole world just for one person, and Sharon Chancey was one person . . . . Until I die, I have to think about that I sent somebody somewhere, and that was God's child, just like I am."), 214:2-10 (commenting on his jailbreak: "We all backslide for time to time . . . . The Bible says we're supposed to renew our minds every day.").

[6] This quip is not comparable to prosecutorial comparisons of defendants to hated religious figures, which have been held improper. See Dkt. No. 80 at 132 n.61. The prosecutor here did not say Lee was Satan-like, but rather, that the jury should not take Lee's statements to be religiously authoritative.

Dkt. No. 80 at 130-31 (quoting Dkt. No. 12-3 at 16:15-17:6, 17:11-12, 23:1-9 (emphasis omitted)).

An attorney obviously does not give ineffective assistance by failing to make a meritless objection. See, e.g., Freeman v. Att'y Gen., State of Fla., 536 F.3d 1225, 1233 (11th Cir. 2008). Any objection counsel could have made to the biblical references here would have been meritless. Biblical references are unconstitutional when the State cites them "for the proposition that death should be mandatory," in contradiction of American law's allowance of room for mercy. Romine v. Head, 253 F.3d 1349, 1368 (11th Cir. 2001); see also Farina v. Sec'y, Fla. Dep't of Corr., 536 F. App'x 966, 981 (11th Cir. 2013) (holding error: "While elevating his own station as divinely-ordained authority, the prosecutor made clear that the death penalty was the sole acceptable punishment under divine law . . . ."); Cunningham v. Zant, 928 F.2d 1006, 1020 & n.24 (11th Cir. 1991); Carruthers v. State, 528 S.E.2d 217, 221-22 (Ga. 2000), abrogated in part on other grounds by Vergara v. State, 657 S.E.2d 863, 866 (Ga. 2008); Hammond v. State, 452 S.E.2d 745, 753 (Ga. 1995); Todd v. State, 410 S.E.2d 725, 733-34 (Ga. 1991).

But the prosecutor here did not try to foreclose juror considerations of mercy by appealing to divine justice. Rather, the prosecutor tried to downplay divine mercy by

AO 72A
(Rev. 8/82)

appealing to *secular* (and divine) justice. Cf. Ford v. Schofield, 488 F. Supp. 2d 1258, 1310 (N.D. Ga. 2007) ("Countering biblical law with biblical law likely minimized any prejudice . . . ."). This sets the biblical references here apart from those in Romine *et al.* See Greene v. Upton, 644 F.3d 1145, 1158-59 (11th Cir. 2011) (holding reasonable state court finding of propriety in "references to principles of divine law related to the penological justifications for the death penalty, including the concept of retribution and whether, considering the enormity of his crime, [the petitioner] should be extended mercy."); cf. Williams v. Campbell, Civ. A. No. 04-0681, 2007 WL 1098516, at *33 (S.D. Ala. 2007) ("The prosecutor . . . argued generally that Christianity is not incompatible with imposition of the death penalty, without stating that religion cried out for that penalty in this case. The Court does not hold that the comment was proper, but not all religious references are of the same intensity, and the one at issue here ranks closer to the mild end of the scale . . . ."); Hill v. State, 427 S.E.2d 770, 778 (Ga. 1993) ("[W]hile it would be improper . . . to urge that the teachings of a particular religion command the imposition of a death penalty in the case at hand, counsel may bring to his use in the discussion of the case well-established historical facts and may allude to such principles

of divine law relating to transactions of men as may be appropriate to the case." (citation and quotation marks omitted)). An objection would have been meritless, so this is not a basis for finding ineffective assistance.

### C. Lee's Other Ineffective-Assistance Contentions Fail.

Lee's six other related contentions also fail.

#### i. Lee's argument that counsel inadequately cross-examined a state witness fails.

Lee unpersuasively contends that his attorneys were ineffective by failing to adequately cross-examine a state witness, Douglas Gregory. The Georgia habeas courts did not decide this issue on the merits, so this Court does so de novo. Cone, 556 U.S. at 472. Gregory testified that he and Lee stole a car and drove it to Florida in March 1994. Dkt. No. 12-1 at 32:18-22, 33:20-22, 38:7-9. There, Lee and his friends beat Gregory after Lee said "there was going to be an initiation" and "he wanted to see blood, a lot of blood." Id. at 36:4-37:4. Lee personally "busted open" Gregory's head in four different places using a large stick. Id. at 36:25-37:23. On cross-examination, trial counsel elicited that Gregory was sent to boot camp and put on probation for the theft, and that Gregory did not know of any related charges brought against Lee. Id. at 45:21-25. Gregory also admitted that he planned the theft with Lee. Id. at 41:9-42:7.

Lee presented additional evidence in his state habeas proceedings. A police officer said Gregory had initially claimed Lee "had kidnapped him at gunpoint," then forced him to steal the car. Dkt. No. 18-4 at 67. Then, Lee had kept him at gunpoint while the two drove to Florida. Id. Gregory then alleged that Lee held him "captive in a camper trailer for 4 days until he was taken out and beaten." Id. The officer thought Gregory "was being totally untruthful" in making those statements. Id.

Lee argues that his trial attorneys were ineffective for not impeaching Gregory with this. Dkt. No. 80 at 147. Although Gregory's police statements did conflict with what he said on the stand, they still described him being beaten. A competent attorney could have decided that the attempted impeachment would have left Gregory's claim that Lee beat him appearing consistent, or that the impeachment would not have made a difference. This argument fails.

### ii. Lee's argument that counsel inadequately prepared witnesses fails.

Lee next says trial counsel did not adequately prepare his lay witnesses and did not give enough information to his mental-health expert. Dkt. No. 80 at 147-48. The lay-witnesses allegation was not addressed by the Georgia habeas courts, so this Court reviews it de novo. Cone, 556 U.S. at

AO 72A
(Rev. 8/82)

472. Lee has not given any reason for the Court to find prejudice. This contention must therefore fail. See Strickland v. Washington, 466 U.S. 668, 687 (1984).

As to the expert, the Georgia Supreme Court found no prejudice. Hall v. Lee, 684 S.E.2d 868, 881–82 (Ga. 2009). This Court can only reject that holding if it was so unreasonable an application of U.S. Supreme Court precedent that no fairminded jurist could agree with it. Harrington v. Richter, 562 U.S. 86, 101 (2011). It was not. Lee does not argue prejudice other than to say that the expert "was not provided with information that was essential to permit an accurate diagnosis of Mr. Lee's mental health." Dkt. No. 80 at 147. The Georgia Supreme Court noted two possible deficiencies in the expert's preparation: the expert was not given a school record misdiagnosing Lee as mentally retarded, and he did not have the information relating to Lee's childhood abuse that surfaced during the habeas proceedings. Hall v. Lee, 684 S.E.2d at 881–82. As to the first issue, the Court found that "trial counsel actually did obtain and submit to [the expert] as a part of Lee's school records an evaluation of Lee performed in kindergarten that contained the information that Lee's classification of functioning had been in 'the Mild level of Mental Retardation'"—and the expert testified "at trial that he found this kindergarten evaluation

'significant.'" Id. at 881. This factual finding must be accepted unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Lee has presented none. The finding stands, and thus, so does the Georgia Supreme Court's conclusion that Lee was not prejudiced by any failure to give the expert the school record. Hall v. Lee, 684 S.E.2d at 881.

As to the childhood-abuse evidence, the expert did testify that he would have added a PTSD diagnosis. Id. But the Georgia Supreme Court found no prejudice. Id. at 882. As explained in Part I.A above, this holding was not so unreasonable an application of U.S. Supreme Court precedent that no fairminded jurist could agree with it. Harrington, 562 U.S. at 101. Hence, Lee cannot establish ineffective assistance based on failure to prepare witnesses.

### iii. Lee's argument that counsel inadequately prepared him to testify fails.

Nor can Lee establish ineffective assistance of counsel based on inadequate help in preparing his own testimony. Contrary to the State's assertion, this issue was not addressed by the Georgia habeas courts, so this Court reviews it de novo. Cone, 556 U.S. at 472. Lee decided to testify on mitigation day, despite earlier conversations wherein he had said he would not. Dkt. No. 14-2 at 72:11-17. Counsel

requested a recess and spoke to Lee for about 35 minutes. Id. at 72:21-22. They tried to dissuade him from testifying. Id. at 72:24. Lee remained "convinced that . . . he should say that he was sorry . . . that he is not a bad person." Id. at 73:16-17. He ultimately did so. Id. at 73:20. Trial counsel thought Lee "came across very genuine and sorry, . . . [he] accomplished what he wanted to accomplish," and there was some benefit to his testimony. Id. at 74:5-14. Lee does not identify any way in which he was prejudiced. None is apparent. This argument fails. See Strickland, 466 U.S. at 687.

### iv. Lee's argument that counsel improperly failed to object to sentencing-phase instructions fails.

Lee contends that his trial attorneys wrongly did not object to, or directly appeal, the sentencing-phase jury instructions, as no mitigating-evidence instruction was given. Dkt. No. 80 at 148-49. This contention is unpersuasive. Insofar as it concerns the failure to initially object, it was not addressed by the Georgia habeas courts, so this Court reviews it de novo. Cone, 556 U.S. at 472. An attorney cannot give ineffective assistance by not making a meritless objection. See, e.g., Freeman v. Att'y Gen., State of Fla., 536 F.3d 1225, 1233 (11th Cir. 2008). Any objection counsel

AO 72A
(Rev. 8/82)

could have made to the instructions would have been meritless, as discussed in Part II.A below.[7]

Any failure to directly appeal fails for the same reason. Lee cannot establish ineffective assistance on this basis.

### v. Lee's argument that counsel improperly failed to object to secular prosecutorial comments fails.

Lee unpersuasively claims trial counsel erred in not objecting to the prosecutor's nonreligious sentencing-phase closing arguments: (1) describing this case as "one of the worst"; (2) telling jurors they had to "prevent [Lee] from being able to escape"; (3) saying the option of life with the possibility of parole would mean "knowing that [Lee would] be paroled to walk the streets of this state and this county and this city"; (4) saying execution "is a lawful function of our system" and not revenge, whereas "[t]here was no one there to protect the rights of Sharon Chancey . . . no one to argue for her right to live," as Lee "acted as judge, jury and

---

[7] Part II.A discusses federal law. As for Georgia law, the relevant statute does require that trial courts "include in . . . instructions to the jury for it to consider[ ] any mitigating circumstances." O.C.G.A. § 17-10-30; see also Ross v. State, 326 S.E.2d 194, 204 (Ga. 1985), abrogated on other grounds by O'Kelley v. State, 604 S.E.2d 509 (Ga. 2004) ("Under Georgia law, a jury should be informed that it can consider all of the evidence presented during both phases of the trial (guilt-innocence and sentence), it should be instructed to consider mitigating circumstances, and it should be clearly and explicitly informed that it may recommend a life sentence even if it finds one or more statutory aggravating circumstances beyond a reasonable doubt." (internal citations omitted)); Hawes v. State, 240 S.E.2d 833, 839 (Ga. 1977). But any objection Lee's trial attorneys could have made still would have been meritless, as the instructions here are not meaningfully distinguishable from the ones upheld in High v. Zant, 300 S.E.2d 654, 662-63 (Ga. 1983). Cf. Dkt. No. 12-3 at 45:7-52:2.

executioner all in one"; and (5) "stating Mr. Lee removed Ms. Chancey from her home at gunpoint," without an evidentiary basis for this. Dkt. No. 12-3 at 17:24, 19:5-23, 20:6-7, 22:12-15; Dkt. No. 80 at 140-41.

The Georgia Supreme Court did not decide this issue, so this Court does so de novo. Cone, 556 U.S. at 472. Again, failure to make a meritless objection is not ineffective assistance, and ineffectiveness requires a showing of prejudice. Freeman, 536 F.3d at 1233; Chandler v. United States, 218 F.3d 1305, 1312-13 (11th Cir. 2000). A prosecutorial remark is not reversible error unless it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (citing Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). The five comments at issue here do not rise to that level.

(1) The comment about this case being "one of the worst" was acceptable. It may be "wrong for the prosecutor to tell the jury that, out of all possible cases, he has chosen a particular case as one of the very worst," as this "suggest[s] that a more authoritative source [than the jury] has already decided the appropriate punishment." Tucker v. Kemp, 762 F.2d 1480, 1484 (11th Cir. 1985) (en banc), vac'd, 474 U.S. 1001 (1985), reaff'd on subsequent determination, 802 F.2d 1293,

1296-97 (11th Cir. 1986) (en banc) (per curiam). But all the prosecutor did here was generically say this was "one of the worst" cases out there. That is permissible. <u>Cf.</u> <u>Reese v. Sec'y, Fla. Dep't of Corr.</u>, 675 F.3d 1277, 1292 (11th Cir. 2012) (endorsing prosecutorial comment that victim experienced "every woman's worst nightmare," given state's ability to prove murder "was 'extremely wicked or shockingly evil'[ or] 'outrageously wicked and vile'" (citation omitted)); <u>Keeton v. Bradshaw</u>, No. 1:05CV0033, 2006 WL 2612899, at *17 (N.D. Ohio Sept. 8, 2006) ("[I]n regard to the prosecutor's comment that the offense was one of the worst crimes ever heard in that courtroom, any prejudice was minimal.").

(2) The invitation to the jury to prevent Lee from escaping was permissible. Future dangerousness "is a proper element in the sentencing jury's decision." <u>Brooks v. Kemp</u>, 762 F.2d 1383, 1412 (11th Cir. 1985) (en banc), <u>vac'd</u>, 478 U.S. 1016 (1986), <u>reinstated</u>, 809 F.2d 700 (11th Cir. 1987) (en banc) (per curiam) (considering prosecutorial suggestion that petitioner "might kill a guard or a fellow prisoner."); <u>see also</u> <u>Jurek v. Texas</u>, 428 U.S. 262, 275 (1976) (plurality opinion) ("[A]ny sentencing authority must predict a convicted person's probable future conduct when it engages in the process of determining what punishment to impose."). Lee had his required "opportunity to introduce evidence on this

AO 72A
(Rev. 8/82)

point." <u>Skipper v. South Carolina</u>, 476 U.S. 1, 5 n.1 (1986);
<u>see also</u> Dkt. No. 12-3 at 31:2-18 (summarizing, in defense
closing argument, evidence that Lee's escape was harmless).

(3) Any error in the prosecutor's comment that a sentence
of life with the possibility of parole would result in Lee
being free due to parole did not prejudice Lee, as the jury
was explicitly given the option of sentencing Lee to life
without the possibility of parole.  Dkt. No. 12-3 at 50:11-13;
<u>cf.</u> <u>Greene v. Upton</u>, 644 F.3d 1145, 1157 (11th Cir. 2011)
(holding state court reasonably held curative instruction
prevented prejudice arising from improper parole comment).

(4) It is permissible for a prosecutor to argue that "[a
petitioner's] execution of [a victim] in a manner much more
horrible than a procedurally proper, legal execution
demonstrate[s] the [petitioner's] belief in the death
penalty."  <u>Brooks</u>, 762 F.2d at 1411.  The comments Lee
criticizes here are just as permissible.

(5) The prosecutor did not manufacture a baseless theory
that Lee had taken Chancey at gunpoint.  The comments read:

> I submit to you, from what you've heard on the
> stand, he kidnapped Sharon Chancey from that
> trailer.  Think about what he's told you.  He now
> tells you that he himself entered into the trailer
> of Sharon Chancey, that he had sent [his girlfriend]
> up there but [Chancey] would not come with [her]
> because she didn't know [her] . . . . After midnight
> of May the 26th, a young girl comes to her door that
> she had never seen before and says [Lee] needs some

AO 72A
(Rev. 8/82)

help, and she says, no, I'm not leaving the home that I'm in; while I'm asleep, you woke me up, I'm not leaving. Yet the defendant himself goes there, according to his own words, enters the trailer, and on two occasion, at least, begs her or asks her to come help him. She finally agrees . . . .

* * * * He wants you to believe . . . that he went to her house and said, Sharon, I need some help, my car has broken down . . . and after a couple of times she finally says, sure, I'll go with you and help you out. Then Jamie, according to his testimony on the stand, says I'll go out here, I've got a friend out here, I'm catching a ride with him back to my car that's broken down. Now does that make any sense at all, that you go to somebody's house, say I need you to help me crank a car, and when they finally agree, say, well, I've got somebody else here I'm catching a ride with?

. . . . I submit to you that Sharon Chancey was taken at gunpoint from that house by Jamie Lee. Other things: Sharon Chancey left her house without her teeth. . . . [S]he left the house with no shoes on, and she left the house in her panties and, according to the defendant, just a nightgown. It's two to four o'clock in the morning. She's walking around supposedly on the side of the road trying to help somebody crank a car, barefooted, in her panties, and in a flimsy nightgown. Does that make any sense at all?

Dkt. No. 12-3 at 11:7–13:7.

This was not a misrepresentation of the evidence. It was an argument based on it. The prosecutor's "conclusion . . . was within the 'considerable latitude in imagery and illustration' granted a district attorney in . . . final argument." Williams v. State, 330 S.E.2d 353, 355 (Ga. 1985) (citation omitted). Trial counsel's failure to object to this and the other comments was not ineffective assistance.

AO 72A
(Rev. 8/82)

### vi. Other ineffective-assistance contentions fail.

Lee raises other ineffective-assistance contentions without briefing them. Dkt. No. 29 ¶ 15(b)-(c), (e), (g)-(j), (n)-(s), (w), (x), (ee). These are too vague to merit relief, refer to withdrawn substantive claims, or are unpersuasive. See Dkt. No. 44; Parts III, IV.A-B infra.

Lastly, Lee complains that trial counsel was ineffective for failing to present issues on appeal. Dkt. No. 29 ¶¶ 15(ii), 19-20. As no issue Lee raises presented a meritorious basis for appeal, this contention fails. Lee has not proven ineffective assistance of counsel.

## II. LEE'S JURY-INSTRUCTION CLAIMS FAIL.

Lee's claims that his sentencing and guilt/innocence jury instructions were improper fail.

### A. Lee's Sentencing-Instruction Contention Fails.

Lee unsuccessfully contends that the trial court's instruction on mitigating evidence was improper. The Georgia habeas courts did not decide this issue on the merits, so this Court does so de novo. Cone, 556 U.S. at 472; see Dkt. No. 20-16 at 4 (holding contention procedurally defaulted); Dkt. No. 87 at 24 (conceding this to have been error, citing Head v. Ferrell, 554 S.E.2d 155, 160 (Ga. 2001)). The trial court did not define mitigating evidence or instruct the jury to weigh it against aggravating evidence. It did define

AO 72A
(Rev. 8/82)

statutory aggravating evidence, and instruct the jury that at least one aggravator had to be found before a death sentence could be imposed. Dkt. No. 12-3 at 45:7-48:17. It also explained the jury's ability to impose a lesser sentence:

> You may set the penalty to be imposed at life imprisonment. It is not required and it is not necessary that you find any extenuating or mitigating fact or circumstance in order for you to return a verdict setting the penalty to be imposed at life imprisonment. Whether or not you find any extenuating or mitigating facts or circumstances, you are authorized to fix the penalty in this case at life imprisonment. If you find from the evidence beyond a reasonable doubt the existence in this case of one or more statutory aggravating circumstances as given you in charge by the Court, then you would be authorized to recommend the imposition of a sentence of life imprisonment without parole or a sentence of death, but you would not be required to do so.
>
> If you should find from the evidence in this case beyond a reasonable doubt the existence of one or more statutory aggravating circumstances as given you in charge by the Court, you would also be authorized to sentence the defendant to life imprisonment. You may fix the penalty of life imprisonment if you see fit to do so for any reason satisfactory to you or without any reason.
>
> Members of the jury, you may return any one of the three verdicts as to the penalty in this case; life imprisonment, life imprisonment without parole, or death.
>
> * * * * Whatever penalty is to be imposed within the limits of the law as I have instructed you is a matter solely for you the jury to determine . . . .

Dkt. No. 12-3 at 49:15-50:13, 51:24-52:2.

These instructions were within the bounds of what the U.S. Constitution permits. A jury need not "be instructed on

the concept of mitigating evidence generally, or on particular statutory mitigating factors." Buchanan v. Angelone, 522 U.S. 269, 270 (1998). A state need not "affirmatively structure in a particular way the manner in which juries consider mitigating evidence." Id. at 276. "[C]omplete jury discretion"—such as that authorized by the charge here—"is constitutionally permissible." Id.

The only thing instructions cannot do is "foreclose the jury's consideration of any mitigating evidence." Id. at 277. The instructions here did no such thing. They "informed the jurors that if they found [an] aggravating factor proved beyond a reasonable doubt," they could fix "the penalty at death." Id. They also told jurors they could impose a lesser sentence "for any reason satisfactory to [them] or without any reason." Dkt. No. 12-3 at 50:8-10. "The jury was thus allowed to impose a life sentence even if it found the aggravating factor proved." Buchanan, 522 U.S. at 277. "Moreover, . . . the instructions . . . did not constrain the manner in which the jury was able to give effect to mitigation." Id. This means that the instructions were constitutionally permissible. Id. at 279.

Pre-Buchanan Eleventh Circuit cases do not hold otherwise. To be sure, "the Constitution requires that there be no reasonable possibility that a juror will misunderstand

the meaning and function of mitigating circumstances." Peek
v. Kemp, 784 F.2d 1479, 1494 (11th Cir. 1986) (en banc). And
"[w]here a defendant has . . . presented mitigating evidence,
the absence of any explanatory instructions on mitigation"
creates such a possibility. Cunningham v. Zant, 928 F.2d
1006, 1012 (11th Cir. 1991). But the Court must look to "the
context of the entire sentencing proceeding." High v. Kemp,
819 F.2d 988, 991 (11th Cir. 1987). Here, although "[t]he
challenged portion of the instruction did not explicitly
define 'mitigation,' nor did it allocate the mitigating
function to the defendant," there was no reasonable
probability that jurors misunderstood their ability to
consider mitigating evidence. Waters v. Thomas, 46 F.3d 1506,
1528 (11th Cir. 1995). The Eleventh Circuit reached this
conclusion in High because: (1) at the sentencing phase's
outset, the judge told the jury that both sides would present
whatever evidence they wanted to; (2) the jury knew "that
'mitigating facts' are those . . . which are 'good' and tend
to help the defendant"; and (3) "the jury was instructed that
it could impose mercy" regardless of mitigators or
aggravators. 819 F.2d at 991.

These facts hold true here as well. At the sentencing
phase's start, the judge told the jury that "the State and the
accused both have a right to submit additional evidence in

aggravation or extenuation and mitigation of the punishment to be imposed.  After hearing any such evidence . . ., the jury then goes back to consider the sentence and determine the punishment to be imposed."  Dkt. No. 12-1 at 14:3-9.  Both sides then said that they had evidence to present.  Id. at 14:11-15.  This notified the jury that it was going to hear competing sets of evidence before determining the sentence. That information, and the jury's ability to consider the competing evidence, were reinforced by Lee's counsel in closing argument.  Counsel began by reminding jurors that "[w]e're deciding whether or not the State of Georgia should take Jamie Lee out and kill him."  Dkt. No. 12-3 at 25:5-6, 13-14.  He discussed the State's aggravating evidence at length, challenging parts of it and its significance.  Id. at 28:6-32:25.  He explicitly talked about mitigating evidence, beginning with a reference to his side's "opportunity in the mitigation phase . . . to show you a little bit about Jamie Lee."  Id. at 33:1-3.  The jury then heard a summary of, and comments upon, the mitigating evidence.  Id. at 33:3-40:13.

Thus, the judge told the jurors they could freely decide whether to impose the death penalty after hearing dueling evidence in aggravation and mitigation, and Lee's attorney identified his evidence as being in mitigation.  Given these facts, there is no reasonable probability that the jury

42

misunderstood the nature and function of mitigating evidence.[8]
See Waters, 46 F.3d at 1528-29 ("[D]efense counsel clearly indicated that 'mitigating evidence' was that which could aid the defendant by leading a jury to impose a sentence of life, even if it found the existence of one or more aggravating circumstances. This facet of the argument gave the jury . . . enlightenment regarding the nature and role of mitigating evidence. The argument also served to link the function of mitigation to the instruction that the jury could impose a life sentence for any reason or none at all."); Williams v. Kemp, 846 F.2d 1276, 1284-85 (11th Cir. 1988) ("By informing the jurors of their wide discretion to recommend against death, these instructions provided the jury with a clear basis to focus upon and consider evidence of mitigating circumstances."). Lee's contention fails.

### B. Lee's Guilt/Innocence-Instruction Contentions Fail.

Lee's contention regarding the guilt/innocence-phase instructions fares no better.[9] The state habeas court found

---

[8] Nor, apparently, did trial counsel think there was such a probability at the time—no objection was made. Dkt. No. 12-3 at 55:10-18; see also Williams v. Kemp, 846 F.2d 1276, 1285 (11th Cir. 1988) ("An additional indication that all parties present at the proceedings perceived that the instructions did in fact convey to the jury the significance of mitigating circumstances is evidenced by the fact that, at the close of the sentencing instructions, no objections or exceptions were made.").

[9] Lee raised this issue in his federal habeas petition, dkt. no. 29 ¶ 29, but did not brief it. See generally Dkt. Nos. 80, 90, 92. The State argues that Lee has abandoned this contention. Dkt. No. 87 at 214-15.

this issue procedurally defaulted because Lee failed to raise it on direct appeal. Dkt. No. 20-16 at 4. "This Court cannot review claims the state habeas court found to be procedurally defaulted unless [the petitioner] establishes cause for, and actual prejudice from, the default or establishes that failure to review the claim would result in a fundamental miscarriage of justice." Butts v. GDCP Warden, 850 F.3d 1201, 1214 (11th Cir. 2017); see also Lucas v. Warden, Ga. Diagnostic & Classification Prison, 771 F.3d 785, 801 (11th Cir. 2014). Lee has done nothing to unlock the door to federal review. His jury-instruction claims fail.

### III. LEE'S BRADY CLAIM FAILS.

Lee unconvincingly claims a violation of Brady v. Maryland, 373 U.S. 83 (1963), in that the prosecution allegedly improperly withheld evidence of Lee's intoxication the night he killed Chancey. "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87. To establish a Brady violation, a petitioner must show:

---

But because "the State fails to cite any authority holding that a petitioner can default on a claim in this manner," and the Court is not aware of any, it will not find abandonment. Hammonds v. Allen, 849 F. Supp. 2d 1262, 1299 (M.D. Ala. 2012).

AO 72A
(Rev. 8/82)

> (1) that the Government possessed evidence favorable
> to the defense, (2) that the defendant did not
> possess the evidence and could not obtain it with
> any reasonable diligence, (3) that the prosecution
> suppressed the evidence, and (4) that a reasonable
> probability exists that the outcome of the
> proceeding would have been different had the
> evidence been disclosed to the defense.

Moon v. Head, 285 F.3d 1301, 1308 (11th Cir. 2002) (brackets omitted) (quoting Spivey v. Head, 207 F.3d 1263, 1283 (11th Cir. 2000)).

The Court already decided this issue in the State's favor, holding, among other things, that intoxication evidence was immaterial given Lee's "admission that he would have killed his father (as [he] originally intended) even if [Lee] had been sober." Dkt. No. 74 at 26. That meant Lee could not "show prejudice to overcome [the] procedural default" found by the state habeas court. Id.; see also id. at 15.

Lee seeks reconsideration in light of Hardwick v. Secretary, Florida Department of Corrections, 803 F.3d 541 (11th Cir. 2015). Even assuming this effort to be timely, Hardwick does not invalidate the Court's earlier order. Hardwick did hold that intoxication can be mitigating. 803 F.3d at 562-63. But the Hardwick petitioner never admitted that he would have killed the victim even had he been sober. The circumstances of that case strongly suggested otherwise: over the five days before the offense, the Hardwick petitioner

took 40 to 50 Quaaludes, continually smoked marijuana, drank a fifth of vodka, and shared in several cases of beer; he then killed a seventeen year-old whom he accused of stealing his Quaaludes. 803 F.3d at 546, 557; Hardwick v. Crosby, 320 F.3d 1127, 1131-42 (11th Cir. 2003). Hardwick is too factually distinct from this case to make the Court revisit its prior holding. Lee's Brady claim still fails.

## IV. LEE'S TRIAL-COURT-ERROR CLAIMS FAIL.

Lee raises five claims of error by the trial court, two of which are procedurally defaulted. The state habeas court found Lee's claims relating to restrictions on his voir dire of prospective jurors, and to the guilt/innocence-phase jury instructions, procedurally defaulted. Dkt. No. 13-11 at 17-18; Dkt. No. 20-16 at 4. Lee has not carried his burden of showing either cause for and prejudice from the defaults, or fundamental miscarriages of justice. These claims fail.

As for other claims, Lee argues that the trial court erred by admitting his statements of May 26-27, 1994 and July 26, 1995, and refusing to direct an acquittal verdict as to felony murder "based on the improper venue of the . . . charge of kidnapping." Dkt. No. 29 at 23.[10] The Supreme Court of

---

[10] These contentions are properly before the Court. The State characterizes them as abandoned because Lee did not brief them. Dkt. No. 87 at 214. But again, "the State fails to cite any authority holding that

AO 72A
(Rev. 8/82)

Georgia addressed all three issues on the merits. <u>Lee v.</u>
<u>State</u>, 514 S.E.2d at 3-5. Its conclusions in the State's
favor can only be rejected if they were such unreasonable
applications of U.S. Supreme Court holdings that no fairminded
juror could agree with them. <u>Harrington v. Richter</u>, 562 U.S.
86, 101 (2011). They were not.

### A. Admission of Lee's May 26-27, 1994 Statements Was Reasonably Upheld.

The Georgia Supreme Court reasonably decided that Lee's
May 26-27, 1994 statements were properly admitted. The
statements were made to law enforcement after Lee's initial
arrest, were incriminating, and included a videotaped
confession. <u>Lee</u>, 514 S.E.2d at 3. Lee contends, without
elaboration, that they were "illegally obtained." Dkt. No. 29
at 23. The Georgia Supreme Court made the following findings
in concluding that the statements were voluntary and
admissible:

> Lee was 19 years old, in police custody only a short
> time, not under the influence of drugs or alcohol,
> not subjected to any physical or psychological
> coercion, and he was informed of and waived
> his *Miranda* rights on several occasions. After Lee
> admitted to killing his father's girl friend and
> stealing the truck, a police officer asked him if he
> would make another statement on audiotape. Lee
> agreed, but when the recording began Lee asked the
> officer, "What should I do? Should I talk?" The
> officer replied, "That's up to you, man. All you're
> going to do is help yourself out."

---

a petitioner can default on a claim in this manner," and the Court does
not know of one. <u>Hammonds</u>, 849 F. Supp. 2d at 1299.

AO 72A
(Rev. 8/82)

<u>Lee</u>, 514 S.E.2d at 3-4. This Court sees no error, and Lee has not shown one. This is not a ground for relief.

**B. Admission of Lee's July 26, 1995 Statement Was Reasonably Upheld.**

The same is true regarding the upholding of the admission of Lee's July 26, 1995 statement. The statement was made to an officer who stopped Lee following Lee's jailbreak. <u>Id.</u> at 5. Lee gave his name and said he was "wanted for murder in Georgia." <u>Id.</u> Lee argues that the statement "was the fruit of an illegal investigatory stop and arrest" made without adequate suspicion of criminal activity. Dkt. No. 29 at 23 (citing under <u>United States v. Cortez</u>, 449 U.S. 411, 417-18 (1981) ("Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.")). The Georgia Supreme Court held otherwise:

> Officer Rodriguez is an experienced police officer. At 5:00 a.m., he observed a vehicle exiting a business area where no residences were located, at a time when no businesses were open and where he believed there had been previous burglaries. In response to the officer's emergency lights, the vehicle's occupants attempted to flee. . . . Taken together, these facts are sufficient to establish at least an articulable suspicion that Lee was engaged in criminal behavior and that Officer Rodriguez was therefore justified in conducting an investigatory stop.

<u>Lee</u>, 514 S.E.2d at 5 (citing, inter alia, <u>United States v. Briggman</u>, 931 F.2d 705, 708-09 (11th Cir. 1991) (per curiam)).

AO 72A
(Rev. 8/82)

This Court again detects no error, and Lee has not identified one. This is not a ground for relief.

### C. The Kidnapping-Venue Issue Was Reasonably Decided.

Lee's ultimate point of trial-court error is that he should have won a directed verdict of acquittal on his felony-murder charge based on improper venue for the underlying kidnapping charge. Dkt. No. 29 at 23. The Georgia Supreme Court rejected this argument on two grounds: (1) "Lee's murder of Ms. Chancey was within the res gestae of the kidnapping with bodily injury, since Ms. Chancey was under the continuous control of the defendant until she was killed" and (2) the jury convicted Lee of malice murder, so any error as to felony murder was moot. Lee, 514 S.E.2d at 4. Lee has not provided any reason why the Supreme Court of Georgia's analysis can, and should, be reversed. This is not a ground for relief, nor is any other trial-court error raised by Lee.

## V. LEE'S EIGHTH AND FOURTEENTH AMENDMENT CLAIMS FAIL.

Lastly, Lee's proportionality claim cannot succeed. The Georgia Supreme Court found that the death penalty was proportional to Lee's crimes, citing nineteen comparator cases. Hall v. Lee, 684 S.E.2d at 884; Lee v. State, 514 S.E.2d 1, 6 & app'x (Ga. 1999). This form of review is permissible. Meders v. Chatman, No. CV 207-90, 2014 WL 3973912, at *40 (S.D. Ga. Aug. 14, 2014) (citing McCleskey v.

AO 72A
(Rev. 8/82)

Kemp, 481 U.S. 279, 306 (1987)).[11]  Lee's proportionality claim fails.

## CONCLUSION

For the reasons above, Lee's Amended Petition for Writ of Habeas Corpus, dkt. no. 29, is **DENIED**.

**SO ORDERED**, this 19TH day of September, 2017.

_____
HON. LISA GODBEY WOOD
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[11] Besides, there is no constitutional right to proportionality review. Pulley v. Harris, 465 U.S. 37, 50-51 (1984).  It is merely "an additional safeguard against arbitrarily imposed death sentences." Id. at 50.  The Court does not have freestanding reason to suspect arbitrary imposition here, so it will not inquire further. See Walker v. Georgia, 129 S. Ct. 481, 483 (2008) (Thomas, J., concurring in denial of cert.) ("Having elected to provide the additional protection of proportionality review, there can be no question that the way in which the Georgia Supreme Court administered that review in this case raised no constitutional issue.").