# In the United States District Court
# for the Southern District of Georgia
# Waycross Division

JAMES ALLYSON LEE,

    Petitioner,

v.

WARDEN,
Georgia Diagnostic Prison,

    Respondent.

CV 5:10-017

## ORDER

Before the Court is Petitioner James Allyson Lee's Motion to Alter and Amend the Judgment. Dkt. Nos. 100, 116. In that Motion, Petitioner also renewed his application for a Certificate of Appealability. Id. For the reasons state below, the Motion is **DENIED** and the Application for a Certificate of Appealability ("COA") is **GRANTED**.

## BACKGROUND

### I. The Underlying Conviction and Direct Appeal

On June 4, 1997, Lee was convicted by a jury of malice murder, armed robbery, and possession of a firearm during the commission of a crime. Lee v. State, 514 S.E.2d 1, 2 (Ga. 1999). He was also convicted of felony murder, but that conviction was vacated by operation of law. Id. at 3 n.1. On June 6, 1997, Lee was sentenced to death. Hall v. Lee, 684 S.E.2d 868, 871 (Ga. 2009);

see also Dkt. No. 12-3 at 85, 91-92. On direct appeal, the Georgia Supreme Court unanimously upheld Lee's conviction. Lee, 514 S.E.2d 1. The United States Supreme Court denied Lee's petition for a writ of certiorari and denied his petition for a rehearing. Lee v. Georgia, 528 U.S. 1006 (1999), reh'g den'd 528 U.S. 1145 (2000).

## II. Habeas History

On August 4, 2000, Lee filed a petition for a writ of habeas corpus in the Superior Court of Butts County. Dkt. No. 20-16 at 2. On March 12, 2009, that court granted Lee's petition. See generally id. On November 2, 2009, the Georgia Supreme Court unanimously reversed the granting of the petition. Hall v. Lee, 684 S.E.2d 868 (Ga. 2009).

On February 5, 2010, Lee filed his federal habeas petition in this Court. Dkt. No. 1. In September 2010, he amended it. Dkt. No. 29. The petition argued for relief on five grounds: "(1) ineffective assistance of counsel; (2) improper jury instructions; (3) a violation of Brady v. Maryland, 373 U.S. 83 (1963); (4) trial-court errors; and (5) violations of the Eight and Fourteenth Amendments by imposition of the death sentence in this case." Lee v. Upton, 2017 WL 4158643, at *3 (S.D. Ga. Sept. 19, 2017). The Court denied Lee's petition. Id. The Court also did not rule on Lee's application for a COA. Id.

On October 17, 2017, Lee moved to alter and amend the judgment of the Court that denied his habeas petition arguing that the Court

incorrectly applied federal law when ruling on one of Lee's ineffective-assistance-of-counsel claims. Dkt. Nos. 100, 116. Lee also applied, in the alternative, for a COA. Id.

**LEGAL STANDARD**

### I. Rule 59(e)

"The *only* grounds for granting [a Rule 59(e)] motion are newly-discovered evidence or manifest errors of law or fact." Arthur v. King, 500 F.3d 1335, 1343 (11th Cir. 2007) (emphasis added) (quoting In re Kellogg, 197 F.3d 1116, 1119 (11th Cir. 1999)). "Reconsideration under Rule 59 is an extraordinary remedy that should be employed sparingly." Yulin Ma v. Au, 2009 WL 10702953, at *4 (S.D. Ga. Sept. 29, 2009). "[A] Rule 59(e) motion [cannot be used] to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." Id. (quoting Michael Linet, Inc., v. Village of Wellington, Fla., 408 F.3d 757, 763 (11th Cir. 2005)). Thus, "the Court will only grant Plaintiff's motion if (1) it presents newly-discovered evidence or (2) identifies manifest errors of law or fact." Jolley v. Donovan, 2011 WL 6400306, at *2 (S.D. Ga. Dec. 19, 2011).

### II. Certificate of Appealability

Federal Rule of Appellate Procedure 22(b)(1) provides in relevant part: "In a habeas corpus proceeding in which the detention complained of arises from process issued by a state court

3

. . . the applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a [COA] under 28 U.S.C. § 2253(c)." Under 28 U.S.C. § 2253(c)(2), a COA should be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." The United States Supreme Court has recently reemphasized that "[t]he COA inquiry . . . is not coextensive with a merits analysis." Buck v. Davis, 137 S. Ct. 759, 773 (2017). Rather, at this stage, "the only question is whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Id. (internal quotation marks and citation omitted).

## DISCUSSION

### I. Rule 59(e) Motion

For this claim, Lee's Motion argues only that the Court wrongly applied federal law when ruling on Lee's ineffective-assistance-of-counsel claim. Specifically, Lee argues that the Court erred when it held that the Georgia Supreme Court's decision that Lee was not prejudiced by his trial counsel's alleged deficient performance during the sentencing phase was reasonable. Because Lee's Motion to Alter or Amend argues that the Court wrongly applied law, Lee is arguing that the Court committed a manifest error of law.

4

Lee argues that under Wilson v. Sellers, 138 S. Ct. 1188 (2018), the Court erred by "focus[ing] on the ultimate decision, rather than the predicate reasoning, of the Georgia Supreme Court," in adjudicating one of Lee's ineffective-assistance-of-counsel claims. Dkt. No. 116 at 3. In support, Lee points to the following language in Wilson: "Deciding whether a state court's decision 'involved' an unreasonable application of federal law or 'was based on' an unreasonable determination of fact requires the federal habeas court to 'train its attention on the particular reasons – both legal and factual – why state courts rejected a state prisoner's federal claims,' . . . and to give appropriate deference to that decision . . . ." Id. at 3-4 (quoting Wilson, 138 S. Ct. at 1191-92). Utilizing this language, Lee concludes that "[b]ecause this Court did not 'train its attention' on the Georgia Supreme Court's 'particular reasons – both legal and factual' for reversing the state court's grant of relief – Mr. Lee is entitled to reconsideration" of his ineffective-assistance-of-counsel claim. Id. at 4 (quoting Wilson, 138 S. Ct. at 1191-92). Indeed, Lee goes so far as to state that the Court not only did not "review [ ] the specific reasons given by the state court and defer [ ] to those reasons if they are reasonable," dkt. no. 124 at 4 (quoting Wilson, 138 S. Ct. at 1292), but concluded "the exact opposite . . . : that the rationale underlying the Georgia Supreme Court's decision was irrelevant because AEDPA directs federal

5

courts to focus on the outcome itself and not the manner in which the outcome was reached." Id. Thus, Lee argues that the Court committed a manifest error of law by allegedly concluding that the reasons of the state court's decision were irrelevant.

The Court did not commit a manifest error of law because the Court, in deciding that the state court's decision did not involve an unreasonable application of law or an unreasonable determination of fact, did train its attention on the particular reasons of the state court's rejection of Lee's claim. A review of the Court's opinion makes this obvious. Before analyzing the state court's reasons for its decision, the Court noted that it could "only reject [the state court's] decision if it was so unreasonable *an application* of a U.S. Supreme Court holding that no fairminded jurist could agree with it." Dkt. No. 98 at 8 (emphasis added). From the outset, then, the Court made clear that its focus was on the state court's *application* of controlling precedent, which entails looking at how the state court applied controlling precedent. The Court's analysis makes this clear. The Court began its analysis of the state court's application of controlling precedent by detailing how that court identified the correct standard for reviewing Lee's ineffective assistance of counsel ("IAC") claim at issue. Id. at 8. The Court then grappled with the particular reasons for the Georgia Supreme Court's decision. First, the Court reviewed the state court's presentation

of the mitigating evidence that Lee's trial counsel presented at sentencing. Id. at 8-9. Then the Court reviewed, in detail, the same with regard to the aggravating evidence the State put forth at Lee's sentencing. Id. at 9-10. The Court then recapped how the "Georgia Supreme Court reweighed the trial evidence together with the habeas evidence." Id. at 10-11. In doing so, the Court detailed the evidence that the state court recognized was presented to the state habeas courts but was not presented by Lee's trial counsel at sentencing. Id. The Court went so far as to explain in a footnote why the Georgia Supreme Court did not fail to consider Lee's post-traumatic stress disorder diagnosis. Id. at 10-11 n.4. Finally, the Court set forth its conclusions in a paragraph that began with the Court's ultimate conclusion that it could not find that the state court's "holding was so unreasonable an application of U.S. Supreme Court precedent that no fairminded jurist could agree with it." Id. at 11.

In that concluding paragraph, the Court quoted language from the Eleventh Circuit that serves as the basis for Lee's Motion for Reconsideration that is now before the Court. Here is that paragraph in its entirety:

> This Court cannot find that this holding was so unreasonable an application of U.S. Supreme Court precedent that no fairminded jurist could agree with it. The relevant U.S. Supreme Court precedent establishes only general rules, like the need to deny relief unless there is a reasonable probability that the sentence would have turned out differently and the need to reweigh

AO 72A
(Rev. 8/82)

all of the trial and habeas evidence. This means state courts must use "a substantial element of judgment." Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). AEDPA respects this by affording them even "more leeway" than usual. Id.; see also Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (deeming ineffective-assistance claim "doubly deferential"). What is more, this Court's focus is not on the Georgia Supreme Court's *opinion*—it is on "whether the *decision* . . . was an unreasonable application" of U.S. Supreme Court holdings. Bishop v. Warden, GDCP, 726 F.3d 1243, 1255 (11th Cir. 2013); see also Gissendaner v. Seaboldt, 735 F.3d 1311, 1329 (11th Cir. 2013)("AEDPA focuses on the result ..., not on the reasoning that led to that result, and nothing in the statute requires a state court to accompany its decision with any explanation, let alone an adequate one." (quotation marks and citation omitted)); cf. Wright v. Sec'y for Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002) ("Requiring state courts to put forward rationales for their decisions so that federal courts can examine their thinking smacks of a 'grading papers' approach that is outmoded in the post-AEDPA era." (citation omitted)).

Id. at 11-12.

The Court prefaced its quotation of the language at issue with the phrase "[w]hat is more." Id. at 12. That prefatory remark makes clear that the Court's use of the language at issue merely set forth an alternate analysis for the Court's ultimate conclusion. In other words, not only were the state court's application of federal law and determination of fact reasonable, but the determination itself was reasonable. Thus, to say that the Court treated the state court's reasoning as irrelevant is incorrect. Just to be clear, the Court engaged in extensive analysis of the Georgia Supreme Court's reasoning.

Further, the remainder of the relevant portions of the Court's opinion shows that it complied with Wilson. The Court extensively analyzed the cases set forth by petitioner. Id. at 12-24. Before jumping into its analysis of petitioner's cited cases, the Court concluded that "U.S. Supreme Court and Eleventh Circuit holdings favoring petitioners do not unambiguously foreclose the decision at which the Georgia Supreme Court arrived. Each was *either followed by that Court* or is distinguishable." Id. (emphasis added). Again, it is clear that the Court "train[ed] its attention on the particular reasons" of the state court's applications of federal law and determinations of fact. Wilson, 138 S. Ct. at 1191. If the Court had not, then it would not have been focused on whether the state court "followed" controlling precedent; instead, the Court would only have focused on the state court's ultimate determination that Lee was not prejudiced.

For these reasons, Lee's Motion to Alter or Amend the Judgment is **DENIED**.

## II. Lee's Mitigative-Evidence Contention Fails

Out of an abundance of caution, the Court will, again, evaluate Lee's claim that the Georgia Supreme Court's adjudication of Lee's mitigating-evidence claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United states; or (2) resulted in a decision that was based

9

on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The Court in determining "whether [the Georgia Supreme Court's] decision involved an unreasonable application of federal law or was based on an unreasonable determination of fact . . . train[s] its attention on the particular reasons — both legal and factual — why" the Georgia Supreme Court rejected Lee's mitigating evidence claim. Wilson v. Sellers, 584 U.S. ----, 138 S. Ct. 1188, 1191-92, 200 L.Ed.2d 530 (2018) (internal quotation marks and citation omitted). In doing so, the Court does not focus "merely on the bottom line ruling of the decision but on the reasons, if any, given for it." Meders v. Warden, Georgia Diagnostic Prison, 911 F.3d 1335, 1349 (11th Cir. 2019).

The bottom line here is the ruling by the Georgia Supreme Court that the trial counsel's failure to present certain mitigating evidence at sentencing did not amount to ineffective assistance of counsel. The reason the Georgia Supreme Court gave for that ruling is that there was no reasonable probability of a different result if trial counsel had acted as Lee claims they should have. In other words, Lee was not prejudiced. Looking further, there are two sets of mitigating evidence that trial counsel failed to present: (1) affidavit testimony relating to Lee's childhood and young adulthood; and (2) expert testimony relating to Lee's mental health. The Georgia Supreme Court found

on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The Court in determining "whether [the Georgia Supreme Court's] decision involved an unreasonable application of federal law or was based on an unreasonable determination of fact . . . train[s] its attention on the particular reasons — both legal and factual — why" the Georgia Supreme Court rejected Lee's mitigating evidence claim. Wilson v. Sellers, 584 U.S. ----, 138 S. Ct. 1188, 1191-92, 200 L.Ed.2d 530 (2018) (internal quotation marks and citation omitted). In doing so, the Court does not focus "merely on the bottom line ruling of the decision but on the reasons, if any, given for it." Meders v. Warden, Georgia Diagnostic Prison, 911 F.3d 1335, 1349 (11th Cir. 2019).

The bottom line here is the ruling by the Georgia Supreme Court that the trial counsel's failure to present certain mitigating evidence at sentencing did not amount to ineffective assistance of counsel. The reason the Georgia Supreme Court gave for that ruling is that there was no reasonable probability of a different result if trial counsel had acted as Lee claims they should have. In other words, Lee was not prejudiced. Looking further, there are two sets of mitigating evidence that trial counsel failed to present: (1) affidavit testimony relating to Lee's childhood and young adulthood; and (2) expert testimony relating to Lee's mental health. The Georgia Supreme Court found

that the childhood and young adulthood evidence "fail[ed] to establish that Lee's childhood was so harmful or horrific" to rise to the level of prejudice. Hall, 684 S.E.2d at 880. The Georgia Supreme Court found that the expert testimony did not rise to the level of prejudice because, after weighing "the totality of the evidence," it found that "Lee's trial expert failed to connect his new diagnosis of PTSD to the crimes, and the connection that his habeas expert made between his undiagnosed 'mental impairments' and the crimes is similar to the connection his trial expert made between his diagnosis of ADHD and the crimes," such that there was not a reasonable probability of a different result. Id. at 882.

Turning to Lee's arguments, he does not take "the proper approach" for most of them. Meders, 911 F.3d at 1350. Instead, Lee "appears to implicitly argue either that deference is not due, or perhaps that deference does not mean much." Id. He "does so by engaging in a line-by-line critique of the state court's reasoning, pointing out evidence that . . . was not given the weight he feels it deserves," id., or by mischaracterizing the Georgia Supreme Court's opinion. See, Dkt. No. 116 at 6-7 (contending that the Georgia Supreme Court "dismissed the affidavit testimony submitted in state habeas proceedings on the basis of its conclusion that *most* of the affidavits Mr. Lee submitted" consisted of hearsay and speculation, when the Georgia Supreme Court merely "note[d] that *much* of [the affidavits]

11

consists of hearsay and speculation," Hall, 684 S.E.2d at 879); id. at 9-12 (arguing that the Georgia Supreme Court improperly "dismissed Dr. Boyer's expert opinion on the ground that it did not materially differ from Dr. Daniel Grant's trial testimony"); id. at 13 (arguing that "[t]he Georgia Supreme Court also unreasonably rejected Mr. Lee's argument that Dr. Grant's failure to diagnose PTSD at the time of trial prejudiced Mr. Lee because the PTSD diagnosis was significantly more mitigating than Dr. Grant's earlier diagnosis of ADHD"); id. (arguing that the Georgia Supreme Court "unreasonably ignored that the trial counsel's 'ADHD and less-than-perfect upbringing' mitigation case lacked any meaningful mitigating force"); id. at 13 n.9 (arguing that the Georgia Supreme Court failed to "take into account that the prosecutor predictably demolished Dr. Grant's testimony that Mr. Lee's ADHD mitigated his crime"); id. at 16-18 (arguing that the Georgia Supreme Court's holding "rested on the court's mistaken conclusion that the crime was more aggravated and Mr. Lee more depraved than the facts actually support"). As the Eleventh Circuit has explained post-Wilson, these arguments are "not the proper approach." Meders, 911 F.3d at 1350. Lee's first argument overemphasizes the "language of a state court's rationale," which "lead[s] to a grading papers approach that is outmoded in the post-AEDPA era." Jones v. Sec'y, Fla. Dep't. of Corr., 834 F.3d 1299, 1311 (11th Cir. 2016). The rest of Lee's arguments are improper

as they "point[ ] out evidence that . . . was not given the weight [Lee] feels it deserves." 911 F.3d at 1350. All of these arguments have been rejected by the Eleventh Circuit and the Supreme Court for their "readiness to attribute error," which "is incompatible with both 'the presumption that state courts know and follow the law' and AEDPA's 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Id. (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

Lee further argues that this Court erred in its order denying Lee's amended petition, see dkt. no. 98; Lee v. Upton, 2017 WL 4158643 (S.D. Ga. Sept. 19, 2017), when it "rejected Mr. Lee's argument that the Georgia Supreme Court imposed an improper 'nexus' requirement to repudiated Mr. Lee's proffered expert testimony in state habeas proceedings," dkt. no. 116 at 14. Ignoring Lee's premise that the Court by engaging with this argument in its September 19, 2017 order followed Wilson (which is, of course, the basis of Lee's present motion),[1] the Court stands by its conclusion

---

[1] Lee argues in his Motion to Alter and Amend the Judgment that the Court's September 19 order did not follow Wilson's mandate that a federal habeas court "train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims." 138 S. Ct. at 1191-92 (citation omitted). However, by realleging the "nexus" argument, Lee recognizes that the Court should address this argument under Wilson, which it did in its September 19 order. Thus, the September 19 order, according to Lee, was not entirely improper

13

for the reasons articulated in that order. See Dkt. No. 98 at 10 n.4; Lee, 2017 WL 4158643, at *4 n.4. The Court's conclusion on this issue is bolstered by the Georgia Supreme Court's conclusion that "there is no reasonable probability that a jury confronted with the psychiatric mitigating evidence as presented in Lee's habeas proceeding, *including Dr. Grant's new diagnosis of PTSD*, would have returned a difference sentence." 684 S.E.2d at 882 (emphasis added).[2] Turning to Lee's final argument that the Georgia Supreme Court improperly "initially rejected the testimony [of Dr. Boyer] on the ground that Dr. Boyer was not the expert used at trial," dkt. no. 116 at 8, this argument fails because as Lee recognizes, the Georgia Supreme Court also found that this testimony "did not materially differ from Dr. Daniel Grant's trial testimony," id. at 10. Thus, even if this finding was improper, the Georgia Supreme Court rejected that Dr. Boyer's testimony did not prejudice Lee on a different ground that was not improper.

For these reasons, Lee's mitigative-evidence contention fails. Lee's Motion to Alter and Amend the Judgment is thus due to be **DENIED**.

---

even though he argues such as the basis of this Motion to Alter and Amend the Judgment.
[2] This statement shows that the Georgia Supreme Court did in fact consider the PTSD diagnosis and did not hold "that none of the state habeas expert testimony was relevant" because of a lack of a "nexus" as Lee argues. Dkt. No. 116 at 14-15.

14

## III. Certificate of Appealability

Turning to whether a COA should be issued, "the only question is whether the applicant has shown that jurists of reason could disagree with the [Court's] resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Buck, 137 S. Ct. at 773 (internal quotation marks and citation omitted). After Lee's conviction and death sentence were affirmed on appeal by the Georgia Supreme Court, Lee v. State, 514 S.E.2d 1 (Ga. 1999), Lee filed a petition for writ of habeas corpus in a Georgia state court. That habeas court Granted Lee's petition on the ground at issue here, i.e., that Lee's trial counsel had been constitutionally deficient in investigating, preparing, and presenting mitigating evidence. Thus, that habeas court vacated Lee's death sentence. Sitting in review of the habeas court, the Georgia Supreme Court disagreed, and reversed the vacatur of Lee's death sentence. See Hall, 684 S.E.2d 868. The Georgia habeas court's granting of Lee's state habeas petition on this issue is sufficient to satisfy the COA standard because it shows that "jurists of reason could disagree with the [Court's] resolution of his constitutional claims." 137 S. Ct. at 773 (internal quotation marks and citation omitted); see also, Rhoades v. Davis, 852 F.3d 422, 429 (5th Cir. 2017) ("When a state appellate court is divided on the merits of the constitutional question, issuance of a

certificate of appealability should ordinarily be routine.") (quoting Jones v. Basinger, 635 F.3d 1030, 1040 (7th Cir. 2011)). Accordingly, Lee's application for a Certificate of Appealability is **GRANTED** as to the issue of whether the Georgia Supreme Court's determination—that Lee was not prejudiced by any deficiency on the part of Lee's trial counsel in investigating, developing, preparing, and presenting mitigating evidence at Lee's sentencing—involved an unreasonable application of clearly established Federal law or was based on an unreasonable determination of the facts in light of the evidence presented.

## CONCLUSION

For these reasons, Lee's Motion to Alter and Amend the Judgment is **DENIED**; Lee's Application for a Certificate of Appealability is **GRANTED** as to the issue of whether the Georgia Supreme Court's determination—that Lee was not prejudiced by any deficiency on the part of Lee's trial counsel in investigating, developing, preparing, and presenting mitigating evidence at Lee's sentencing—involved an unreasonable application of clearly established Federal law or was based on an unreasonable determination of the facts in light of the evidence presented.

**SO ORDERED,** this 20th day of March, 2019.

HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)